UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANAID RAKIEP | * | CIVIL ACTION |
| VERSUS | * | NO. 24-1987  DIV. 2 |
| HESS CORPORATION, ET AL. | * | MAG. JUDGE CURRAULT |

### ORDER AND REASONS

This matter was referred for all proceedings including entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties.  ECF No. 35 at 6; No. 37; No. 54.

Before me is Hess Corporation's Motion to Dismiss for Failure to State a Claim (ECF No. 65), which was scheduled for submission on September 11, 2024.  Plaintiff filed an Opposition Memorandum, and Defendant filed a Reply Memorandum.  ECF Nos. 83, 86.  No party requested oral argument, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Defendant Hess Corporation's Motion to Dismiss is GRANTED for the reasons stated herein.  Plaintiff may, however, seek leave to amend, if possible, within 14 days.

### I.     BACKGROUND

This case arises from an accident on the Stampede TLP platform on the Outer Continental Shelf ("OCS") of the Gulf of Mexico, Green Canyon Blocks 468, 511 and 512, on May 31, 2023.[1] Plaintiff Janaid Rakiep filed this personal injury action against platform owner Hess Corporation ("Hess"), prime contractor Inspectram Limited ("Inspectram"), and subcontractor Southey

---

[1] ECF No. 15 ¶ 3.1.

Mauritius Ltd. ("Southey") alleging injuries sustained in a 90-foot uncontrolled descent while employed as an abselier by Southey.[2]

Plaintiff's Amended Complaint alleges that the Southey crew improperly secured the Petzl I'D (the device used to secure the primary rope point) and failed to use a stopper knot behind the anchor point I'D,[3] that Inspectram is responsible as the borrowed employer,[4] and that Hess negligently created the dangerous conditions by failing to adequately review the work scope and job analysis and failing to ensure independent double-checks and functional testing.[5]  Plaintiff seeks to recover on the basis of negligence and gross negligence for which he seeks compensatory and punitive damages.[6]

## II.     THE PENDING MOTION

Defendant Hess seeks dismissal of all claims against it on the basis that Plaintiff has neither plausibly alleged any duty breached by Hess nor any basis for punitive damages.  ECF No. 65.  It cites to Plaintiff's allegations that he was trained as a Level 1 Rope Access Technician that was supervised by a Southey Level 3 Rope Access Technician and that Inspectram's engineers (not Hess) provided orders to the Southey crew.  ECF No. 65-1 at 2-3.  And while Plaintiff alleges that Hess failed to properly review Southey's risk assessment and rope access fall protection plan, he does not allege that these issues caused his fall; rather, he alleges that Southey's supervisor's failure to properly attach the Petzl I'D or use a stopper knot caused his injury.  *Id.*  Thus, Hess argues, Plaintiff's conclusory assertion that Hess was responsible for the dangerous conditions is insufficient to state a claim because a principal is not liable for torts committed by an independent

---

[2] *Id.* ¶¶ 1.1-3.3, 3.6.
[3] *See id.* ¶¶ 3.4-3.5, 4.3.
[4] *See id.* ¶ 4.4.
[5] *Id.* ¶ 4.2.
[6] *Id.* ¶¶ 4.1-5.2.

2

contractor unless the contractor was performing ultrahazardous activities, the principal retained operational control over the contractor's negligent acts that caused the injuries, or the principal expressly or impliedly ordered or authorized its contractor's negligent acts. *Id.* at 4-7. Further, there is no allegation that Hess owned, used, or should have used the Petzl I'D or that it should have taken any action with regard to Southey's equipment. *Id.* at 7-8. Hess concludes with a request for dismissal of the punitive damages claim because Louisiana generally does not authorize recovery of punitive damages. *Id.* at 9.

In Opposition, Plaintiff asserts that *Iqbal* and *Twombly* do not require detailed allegations as demanded by Hess and his allegations satisfy Rule 8's short and plain statement requirement. ECF No. 83 at 7-8. Further, Plaintiff asserts that he has sufficiently alleged that Hess's duty arises not on the basis of premises liability, but rather, on the basis that Hess participated in job safety analysis planning. *Id.* at 1-4. Plaintiff argues that he has set forth sufficient allegations that Hess owed him a duty under Louisiana law as operational control depends on whether and to what degree Hess contractually reserved the right to control the work rather than the supervision and control actually exercised. *Id.* at 6-8. He further argues that the cases cited by Hess are inapposite because those involved summary judgment motions, not Rule 12(b)(6) motions. *Id.* at 7.

In Reply, Hess argues that Plaintiff's efforts to distinguish between legal conclusions and factual conclusions is unsupported by the caselaw and reiterates its arguments that Plaintiff has not alleged the existence of any duty because Plaintiff does not allege that Hess maintained operational control over how Southey tied knots or loaded rope into the Petzl I'Ds. ECF No. 86 at 3-6. Hess also reiterates its argument that, even if Hess had a duty, Plaintiff has not established causation (i.e., how the failure to perform the pre-work safety analysis would have included the

granularity of tying knots or loading rope). *Id.* at 6. Further, Hess notes that Plaintiff fails to address the request to dismiss the punitive damages claim. *Id.*

### III.   APPLICABLE LAW AND ANALYSIS

#### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted." The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This procedural mechanism tests the sufficiency of the Complaint; it is not meant to resolve disputed facts or tests the merits of the case: "[T]he issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims. The other side will have its say later." [7] In short, Rule 12 requires the court to assess whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[8]

To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[11]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not

---

[7] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020) (internal quotations omitted) (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)). As the Supreme Court explained: "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).
[8] *Sewell*, 974 F.3d at 581 (quoting *Iqbal*, 556 U.S. at 678).
[9] *Twombly*, 550 U.S. at 555, 570.
[10] *Iqbal*, 556 U.S. at 678.
[11] *Id.* (quoting *Twombly*, 550 U.S. at 557).

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "shown"— "that the pleader is entitled to relief."[12]

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[13] The complaint must include enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[14]

The court liberally construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's allegations as true, and draws all reasonable inferences in favor of the plaintiff.[15] Although fact questions and ambiguities in the controlling law must be resolved in plaintiff's favor,[16] the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[17] And while the Rule 12(b)(6) inquiry typically focuses on whether the plaintiff plausibly alleges the element of a claim, dismissal may also be based on a successful affirmative defense, provided that the affirmative defense appears on the face of the complaint.[18] The pleading must reveal beyond doubt that the plaintiff can prove no set of facts that would overcome the defense or otherwise entitle him to relief.[19]

---

[12] *Id.* at 679 (internal citation omitted) (quoting FED. R. CIV. P. 8(a)(2)); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).
[13] *Iqbal*, 556 U.S. at 678 (citation omitted).
[14] *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555, 559-60, 570).
[15] *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[16] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).
[17] *Degenhardt v. Bintliff*, No. 24-40034, 2024 WL 4274180, at *2 (5th Cir. Sept. 24, 2024) (citing *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation marks and citation omitted)); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010); *see also Twombly*, 550 U.S. at 555 (citation omitted).
[18] *Am. Precision Ammunition, L.L.C. v. City of Min. Wells*, 90 F.4th 820, 824 (5th Cir. 2024) (quoting *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020))).
[19] *Id.* (citation omitted).

B. <u>Louisiana Law as Surrogate Federal Law</u>

The parties do not dispute that, under the Outer Continental Shelf Lands Act ("OCSLA"), Louisiana tort law governs this negligence action as surrogate federal law.[20] Given that the controversy arose on an OCSLA situs,[21] federal maritime law does not apply of its own force, and state law is not inconsistent with federal law,[22] the Court agrees that Louisiana law governs this negligence action.[23]

1.  **Louisiana Tort Law**

Louisiana employs a duty-risk analysis to establish negligence under Louisiana law. A plaintiff must show (1) the defendant had a duty to conform its conduct to a specific standard of care; (2) the defendant failed to conform its conduct to the standard of care; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the injuries; and (5) actual damages.[24] The threshold question of whether the defendant owed a duty is a question of law.[25]

Under Louisiana law, a principal is generally not liable for the negligent acts of its independent contractor committed in the course of performing its contractual duties.[26] This general rule is, however, subject to several exceptions:[27] (1) the contractor is performing ultrahazardous activities; (2) the principal retains operational control over its contractor's negligent

---

[20] ECF Nos. 15 ¶ 2.1; 65-1 at 4.
[21] Federal law applies to the outer Continental Shelf, including artificial islands on thereof, "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1)(A)(ii). Oil and gas offshore platforms are treated as artificial "islands." *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 810-11 (5th Cir. 2024) (quoting *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 361 (1969)).
[22] *See Hicks v. BP Expl. & Prod., Inc.*, 308 F. Supp. 3d 878, 886 (E.D. La. 2018) (Africk, J.) (citations omitted).
[23] State laws are adopted as surrogate federal law to the extent that they are applicable and not inconsistent with federal law. *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 609 (2019) (internal brackets omitted) (quoting § 1333(a)(2)(A)).
[24] *Brewer v. J.B. Hunt Transp., Inc.*, 35 So. 3d 230, 240 (La. 2010) (citation omitted).
[25] *Id.* (citation omitted).
[26] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 380 (5th Cir. 2001) (citations omitted).
[27] *Parkman v. W&T Offshore, Inc.*, 673 F. Supp. 3d 811, 819, 822 (M.D. La. 2023).

acts; or (3) the principal expressly or impliedly authorizes its contractor's negligent acts. [28] In addition to vicarious liability of a principal who either retains or exercises operational control over the independent contractor, the principal may also be liable for his own independent negligence. [29]

There is no suggestion that the work involved was an ultrahazardous activity. Thus, Plaintiff's claim against Hess appears premised upon either vicarious liability based on operational control or independent liability.

### a. Operational Control

Turning to the operational control exception, the court must determine whether and to what extent the right to control has been contractually reserved by the principal and whether the principal exercised control through an express or implied order to the contractor to engage in an unsafe work practice leading to an injury. [30] "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way." [31] Actual control is relevant to the operational control exception, but the supervision and control that is actually exercised by the principal is less significant than the principal's contractual reservation of the right to control. [32] However, contractual reservation of general rights, such as the right to issue a stop work order, to order work to resume, to inspect work progress, to monitor performance, to make suggestions or

---

[28] *Id.* at 822 (citing *Roberts*, 266 F.3d at 380; *Coleman v. BP Expl. & Prod., Inc.*, 19 F.4th 720, 729–31 (5th Cir. 2021)); *see also Echeverry v. Jazz Casino Co.*, 988 F.3d 221, 232-34 (5th Cir. 2021) (separately analyzing operation control and the unsafe-work-practices exceptions).
[29] *Id.* at 822-23 (citing *Coleman*, 19 F.4th at 734).
[30] *Echeverry*, 988 F.3d at 232; *Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997). The "unsafe-work-practices" exception requires the principal to "'expressly or impliedly authorize[ ] the particular manner' which rendered the work unsafe." *Coleman*, 19 F.4th at 731 (quoting *Echeverry*, 988 F.3d at 233 (quoting *Davis v. Dynamic Offshore Res., L.L.C.*, 865 F.3d 235, 236 (5th Cir. 2017))). It looks to the specific "instrumentality that caused [the] injury and not the work's overall purpose." *Id.* at 732. There is no suggestion that Hess specifically directed anything, including an unsafe work practice.
[31] *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003); *see also Grammer v. Patterson Servs., Inc.*, 860 F.2d 639, 645 (5th Cir.1988) (holding a principal does not retain operational control unless it retains control over the methods and manner of the work, i.e., gives "how to" instructions to the independent contractor).
[32] *Echeverry*, 988 F.3d at 232 (citing *Ainsworth v. Shell Offshore Inc.*, 829 F.2d 548, 550–51 (5th Cir. 1987)).

recommendations that need not be followed, or to abide by principal's safety regulations, does not constitute retention of operational control.[33]

### b. Independent Duty

Although the owner of a facility has the duty of exercising reasonable care for the safety of persons on its premises and the duty of not exposing such persons to unreasonable risks of injury or harm,[34] that duty does not extend to require the owner to intervene in and correct the work practices selected by independent contractors.[35] In determining whether a principal owes a duty to employees of independent contractors, courts consider whether the hazard was created by the principal or the independent contractor.[36] Thus, a principal does not have any obligation to provide its independent contractor with a safe place to work unless the principal either affirmatively assumes that duty or creates a workplace hazard.[37] Further, a principal is not obliged to intercede in an independent contractor's decision as to how to perform the work.[38]

### c. Analysis

Hess argues that Plaintiff has not identified a duty owed by Hess while Plaintiff argues that he has alleged both an independent duty and a duty based on operational control over his employer.

*Twombly* makes clear that Plaintiff must allege facts sufficient to push the claim across the line from conceivable—i.e., "possible"—to plausible. Plaintiff's Amended Complaint does not

---

[33] *Id.* at 232 (internal quotations omitted) (quoting *Coulter*, 117 F.3d at 912); *Coleman*, 19 F.4th at 730 (internal quotations omitted) (quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 613 (5th Cir. 2018)); *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 269-70 (5th Cir. 1992); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469, 1471 (5th Cir. 1989).
[34] *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994) (internal quotations omitted).
[35] *Thomas v. Burlington Res. Oil & Gas Co.*, No. 99-3904, 2000 WL 1528082, at *2 (E.D. La. Oct. 13, 2000) (Barbier, J.) (citing *Ainsworth*, 829 F.2d at 551; *Kent v. Gulf States Utils.*, 418 So. 2d 493, 500 (La. 1982)).
[36] *Iglesias v. Chevron U.S.A. Inc.*, 656 F. Supp. 2d 598, 602 (E.D. La. 2009) (Zainey, J.) (citing *Thomas*, 2000 WL 1528082, at *2).
[37] *Coleman*, 19 F.4th at 732 (citing *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994); *Zepherin v. Conoco Oil Co.*, 884 F.2d 212, 213 (5th Cir. 1989)).
[38] *See Ainsworth*, 829 F.2d at 551.

set forth sufficient facts necessary to state a plausible claim that Hess may be either independently liable or vicariously liable for its independent contractor's negligence through its operational control. Specifically, Plaintiff has not pleaded facts that would allow this Court to reasonably infer that Hess is liable for Southey's improper rigging of its own equipment by its supervisor. Thus, he has not asserted a plausible claim for relief.

Again, Plaintiff specifically alleges that the Petzl I'D device supplied by Southey was insufficient for the task because it allowed the rope to feed out due to improper rigging by Southey's supervisor and this supervisor's failure to tie a stopper knot. ECF No. 15 ¶ 3.4. The allegations against Hess are that it failed to perform adequate pre-job safety planning and review. *Id.* ¶ 3.7. Plaintiff also alleges Hess reviewed and jointly controlled the work scope and associated job safety analysis; Hess's Offshore Installation Manager and safety team negligently approved the risk assessment and rope access fall protection plan because it allowed the job to proceed with inadequate equipment and inadequate process; and "Southey and Hess" failed to complete administrative controls normally used as part of a rope access program including independent double-checks and functional tests. *Id.* ¶¶ 3.2-3.5.

Plaintiff's allegations are insufficient to plausibly allege that Hess retained operational control over the work or had an independent duty to intervene in Southey's work. Indeed, Plaintiff alleges no facts regarding contractual reservation nor does he allege that Hess had the right to control the step-by-step process of accomplishing the work, that Hess exercised operational control over the step-by-step process, or that Hess instructed Southey's supervisor as to how to insert the rope into the Peltz I'D or tie (or not tie) a stopper knot. The absence of any factual allegations regarding these matters leaves Plaintiff short of establishing a duty owed by Hess (as principal) to

him (as employee of an independent contractor's subcontractor).[39] Likewise, Plaintiff does not allege any facts to suggest that Hess created the hazard rather than Southey's supervisor in charge of inserting and rigging the rope.

Because Plaintiff has not alleged sufficient facts to establish that Hess owed him a duty, as necessary under Louisiana's duty-risk analysis, he fails to state a claim. Without a duty, the Court need not address the causation factors of the duty-risk analysis.[40]

### 2. **Plaintiff Cannot Recover Punitive Damages**

Plaintiff has failed to respond to the request to dismiss Plaintiff's punitive damages claim.

As to the merits of the motion, punitive damages is not an independent cause of action in Louisiana; rather, it is a form of damages available for certain cognizable causes of action.[41] Moreover, Louisiana generally prohibits imposition of punitive damages, allowing same in limited circumstances not applicable here.[42] And although Louisiana's conflicts of law provisions allow for punitive damages in limited circumstances,[43] state conflict law has no relevance in OCSLA cases.[44]

The allegations of Plaintiff's Amended Complaint do not fall within any of the authorized bases for imposition of punitive damages under Louisiana law.

---

[39] *See Thomas*, 2000 WL 1528082, at *2 (dismissing claims against platform owner asserted by independent contractor's employee alleging platform owner had knowledge of unsafe condition and failed to intervene because platform owner did not create the unsafe condition); *Hebert v. CXY Energy, Inc.*, 72 F. Supp. 2d 681, 688 (W.D. La. 1999) (granting summary judgment to principal where plaintiffs could not establish that any principal employee directed decedent to unhook his lanyard while performing sandblasting on offshore platform).
[40] *Pitre v. La. Tech Univ.*, 673 So. 2d 585, 590 (La. 1996).
[41] *Travers v. Chubb Eur. Grp. SE*, No. 23-6152, 2024 WL 363346, at *4 (E.D. La. Jan. 31, 2024) (Lemelle, J.) (quoting *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 16 F. Supp. 3d 755, 765 (E.D. La. 2014) (Brown, J.)).
[42] *Ross v. Conoco, Inc.*, 828 So. 2d 546, 555 (La. 2002) (citing *Ricard v. State*, 390 So. 2d 882 (La. 1980); *Killebrew v. Abbott Labs.*, 359 So. 2d 1275 (La. 1978)). *E.g.*, LA. CIV. CODE arts. 2315.3-2315.11 (allowing exemplary (punitive) damages in cases involving child pornography, drunk driving, sexual abuse of minors, domestic violence, hazing, and sexual assault).
[43] LA. CIV. CODE art. 3546.
[44] *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2015 WL 13533521, at *4-5 (E.D. La. Feb. 27, 2015) (Brown, J.) (citing *Wooton v. Pumpkin Air, Inc.*, 869 F.2d 848, 850 (5th Cir. 1989) (stating that OCSLA does not permit application of the adjacent state's choice of law rules to determine applicable substantive law)).

## IV. CONCLUSION

Plaintiff's Amended Complaint, as drafted, does not contain sufficient factual allegations to state a plausible (rather than simply possible) claim against Hess Corporation based on either vicarious or independent liability. Likewise, Plaintiff's Amended Complaint does not contain any factual allegations that would give rise to a basis for imposition of punitive damages under Louisiana law, applied as surrogate federal law under OCSLA.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendant Hess Corporation's Motion to Dismiss (ECF No. 65) is GRANTED, subject to Plaintiff's right to seek leave to file an amended complaint within 14 days. Failure to do so will result in the dismissal of his claims against Hess Corporation.

New Orleans, Louisiana, this  3rd  day of October, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE